Manly, J.
The facts, of this case, are similar to those presented in the case of Hilliard v. The same Company, reported in 6 Jones, 343, and our reflections lead us to the same general conclusions.
Where freight is carried on a railroad from station to station, if the consignee or agent be not ready to receive it at its destination, the duty of the carrier is discharged by placing it in the ware-house of the company, for there is no usage or rule of law which requires the company’s servants to deliver elsewhere than at the station, and from the nature of this mode of transportation, it is'impracticable to give notice prior to the necessary discharge of the freight. We think, therefore, the duty of the company, as a common carrier, is fulfilled when the packages are placed in the ware-house of the company (no person'being present to receive them) with? *484 out giving notice to the consignee or agent. The exigences of. transportation by steam require this.
Other duties then devolve ®upon the company, viz., those which appertain to a bailment for transportation. The point first occurring in this view of the case is, whether the duty to notify owners or consignees belongs to this particular kind of trust. We do not think it necessary to discuss how this may be in all cases. In the particular one before us, it was not, as we conceive, the duty of the company. The party, by whom the package was owned, and to whom it was directed, resided at the distance of eighteen miles from the station, and had no agent at the place. It cannot be that the ware-house men of the company were required to notify through the mail. The great number and variety of articles transmitted by this mode of conveyance through our country, would make such a duty extremely burthensome, if not impracticable. What may be the rights of the consignees residing at the station, we leave undecided. 'Those who reside at distances, making communication inconvenient, except through the mails, are not entitled to notice.
The remaining question presented by the case,fin the point of view we are now considering, is, whether the company, as ware-house men, took the proper care of the packages in question. Ordinary care is what is required, and this is defined by a recent elementary treatise (Story on Bailments section 41) to be “ that which men of common prudence, generally exercise about their own affairs in the age and country in which they live.” We* have attentively considered the facts bearing upon this onquiiy, and conclude there is nothing to show a want of the requisite care. The house is of the kind used by prudent men to store things of value. It is secured by fastenings appropriate to such buildings — is kept by an agent, who resides a short distance from it, and who closed it, by its fastenings, at all times, both night and day, when he was absent from it. This satisfies the definition of ordinary care, f There may be conditions of a city, or other community, making a night-watch a proper *485 safe-guard, but there is nothing in the previous general history of our country places, or in the proofs respecting this particular locality, which induces us to think that it was demanded there by the requirements of ordinary care.
Upon the whole case, we concur in the opinion of the Court below, and the judgment of nonsuit should, therefore, be affirmed.
Per Curiam,
Judgment affirmed.